UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

WILMA HUNT-WATTS,

                  Plaintiff,

          v.

NASSAU HEALTH CARE CORPORATION,

                  Defendant.

-----------------------------------------------------------------x

**MEMORANDUM & ORDER**
12-CV-1815 (PKC)

PAMELA K. CHEN, United States District Judge:

Before the Court is the motion of Defendant Nassau Health Care Corporation ("NHCC" or "Defendant") for summary judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 56. Plaintiff's complaint, which was filed *pro se*[1], asserts causes of action for: (1) disability discrimination and failure to accommodate a disability in violation of the Americans with Disabilities Act of 1990 ("ADA"); (2) age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"); and (3) race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Defendant moves for summary judgment as to all of Plaintiff's claims. (Dkt. 33.)

For the reasons stated below, Defendant's motion is granted, and judgment is entered in Defendant's favor on all of Plaintiff's claims.

*BACKGROUND*

Defendant is a "New York State public benefit corporation," whose mission is to provide medical and healthcare services to the public. (Dkt. 32 ("Def. St.") ¶ 1.) As such, Defendant is

---

[1] Plaintiff has since obtained counsel to represent her in this matter.

subject to the New York State Civil Service Law ("CSL"), which imposes rules on public employers.  (Def. St. ¶ 1.)  Plaintiff, a licensed podiatrist formerly employed by Defendant, is an African-American female who was approximately 51 years old at the time this lawsuit was commenced.  (Dkt. 1 at 3.)

I.     Plaintiff's Employment and Accident

The circumstances of this case are unfortunate.  (Def. St. ¶ 2.)  Plaintiff is a licensed podiatrist who began employment with Defendant in September 2006 as a Civil Service Podiatrist.  (Def. St. ¶ 2.)  The terms of Plaintiff's employment and the requirements of the podiatrist position are set forth in a written job description promulgated by the Nassau County Civil Service Commission.  (Def. St. ¶ 3.)  According to the job description, among the required duties of a podiatrist are:  "operat[ing] on the bones, muscles, or tendons of the feet for the correction of minor deficiencies and deformities of a mechanical or functional nature," "operat[ing] . . . for diseases, injury, deformity or other conditions of the foot," and "[t]reat[ing] simple and uncomplicated fractures of the bones of the feet."   (Def. St. ¶ 4.)  These duties are classified in the job description as "ADA ESSENTIAL FUNCTIONS."[2]  (Dkt. 31-6 at 1.)

In approximately July 2007, Plaintiff was involved in a severe automobile accident, and sustained significant injuries to her face and body.  (Dkt. 39-2 ¶¶ 10–20.)  Plaintiff recovered

---

[2] ADA regulations provide that "[a] job function may be considered essential for any of several reasons, including but not limited to the following:

(i) The function may be essential because the reason the position exists is to perform that function;
(ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
(iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

29 C.F.R. § 1630.2(n).

from her injuries and returned to work approximately two-to-three weeks following the accident. (Dkt. 39-2 ¶ 12.) However, some months after her return, in December 2007, Plaintiff began experiencing numbness in her extremities. (Dkt. 39-2 ¶¶ 14–15.) As a result of continued numbness and weakness in her extremities, in March 2008, Plaintiff underwent exploratory surgery and a biopsy of her spinal cord to determine the source of the symptoms. (Dkt. 39-2 ¶¶ 15; Def. St. ¶ 10.) Plaintiff spent approximately one month in the hospital recovering from the procedure and approximately one year rehabilitating. (Dkt. 39-2 ¶ 17; Def. St. ¶ 11.) During this time, Plaintiff had severe difficulties using her arms and walking. (Def. St. ¶ 10.) Plaintiff was unable to work during this time period and did not return to work at NHCC.

II.     Plaintiff's Attempt to Return to Work

The CSL provides that, where a civil service employee is unable to return to work to perform the essential functions of the position within one year of an initial absence due to a non-occupational disability, her employment may be terminated. (Def. St. ¶ 12; CSL § 73.) Pursuant to the CSL, on March 9, 2009, more than a year after the start of Plaintiff's leave from work, Defendant informed Plaintiff that it intended to terminate her employment unless she was able to return to work in a timely manner. (Def. St. ¶ 12.) In response, Plaintiff contacted Defendant to discuss her return. Plaintiff met with Dr. Glenn Faust, the chairman of Defendant's Department of Surgery, who previously supervised Plaintiff, and Maureen Roarty, Defendant's Executive Vice President of Human Resources. (Def. St. ¶¶ 5, 13.)

During the meeting both Dr. Faust and Ms. Roarty observed that Plaintiff had substantial difficulty using her hands, and Plaintiff stated she was unsure whether she could perform medical procedures. (Def. ¶¶ 14–16.) Faust and Roarty stated their concerns regarding Plaintiff's ability to perform the duties of the podiatrist position, and Roarty informed Plaintiff

that, before she could resume her employment, she would have to undergo medical evaluations to determine whether she was fit to return to work and perform the essential functions of the position. (Def. St. ¶ 17.) Plaintiff underwent the required diagnostics and provided the results to Defendant. (Def. St. ¶ 18–20.)

The results of the evaluations were not positive. Plaintiff's rehabilitation expert, Dr. Jung Ahn, found that Plaintiff's "upper extremities revealed a lack of joint position sense and vibratory sense in both hands, and she [was] unable to recognize an object placed in the hand without looking." (Def. St. ¶ 18.) As a result, Dr. Ahn concluded that Plaintiff "may return to work in non-surgical podiatry" and only was "able to provide consultative services without performing surgery at the present time."[3] (Def. St. ¶ 18.)

Plaintiff also saw a neurologist, Dr. Imran Wahedna, on April 1, 2009. (Def. St. ¶ 19.) Dr. Wahedna concluded that Plaintiff "ha[d] decreased use of [her] hands." (Def. St. ¶ 19.) Dr. Wahedna stated that she is "cleared to work, but not in the operating room." (Def. St. ¶ 19; Dkt. 31-11 at 2.)

As a result of the evaluations, Dr. Faust and Ms. Roarty determined that Plaintiff was unable to perform the essential functions of her position with or without a reasonable accommodation (Def. St. ¶ 20), and concluded that Plaintiff must be terminated. (Def. St. ¶¶ 20, 24.)

Upon notice to Plaintiff that Defendant intended to terminate her, Plaintiff requested a pre-termination hearing to determine whether she was able to perform the essential functions of

---

[3] Neither of the parties provides a definition of "surgery" for purposes of the motion. The Oxford Dictionary's primary definition of "surgery" is "the art or practice of treating injuries, deformities, and other disorders by manual operation or instrumental appliances; surgical treatment." *The Oxford English Dictionary*, Vol. XVII at 293 (2d ed. 1989).

the position.  (Def. St. ¶ 21.)  Plaintiff was informed that she had the right under the CSL to present medical evidence in support of her ability to perform her job functions.  (Def. St. ¶ 21.) Plaintiff appeared at the pre-termination hearing on June 2, 2009.  (Def. St. ¶ 22.)  Plaintiff did not present additional medical evidence at the hearing.  (Def. St. ¶ 23.)[4]

Plaintiff's employment was terminated on June 16, 2009.  (Def. St. ¶ 24.)  Although Plaintiff was terminated, she was informed that she could apply for reappointment to her position within one year of the cessation of her disability.  (Def. St. ¶ 24.)  If Plaintiff could demonstrate her ability to perform the essential functions of a podiatrist, she would be reinstated or placed on a waiting list for the same or another position.  (Def. St. ¶ 24.)  Plaintiff has not reapplied for employment or submitted additional evidence regarding her fitness for employment.  (Def. St. ¶ 25.)

Plaintiff submitted a charge of employment discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on or about August 13, 2009.  (Dkt. 1 at 4.) The EEOC investigated Plaintiff's claims, and ultimately determined that it was unable to conclude that Plaintiff had been discriminated against, and issued her a right-to-sue letter on or about December 29, 2011.  (Dkt. 1 at ECF 12.)  Plaintiff timely filed this action *pro se* on April 11, 2012 (Dkt. 1), and later obtained counsel.  Defendant moves for summary judgment with respect to all of Plaintiff's claims, and the motion was fully briefed on November 26, 2013.

### SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if the submissions of the parties taken together show "that there is no genuine issue as to any material fact and the moving party is entitled to

---

[4] Plaintiff claims in her 56.1 Statement that she was not afforded the opportunity to present medical evidence.  (Dkt. 37 ("Pl. St.") ¶ 23.)  The evidence to which Plaintiff cites in her statement is, however, inapposite to her point, and Plaintiff has failed to show that she was in any way prevented from presenting medical evidence at her hearing.

judgment as a matter of law." FRCP 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252 (1986). "The moving party bears the burden of establishing the absence of any genuine issue of material fact," *Zalaski v. City of Bridgeport Police Department*, 613 F.3d 336, 340 (2d Cir. 2010); *see Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006), after which the burden shifts to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011); *see also F.D.I.C. v. Great American Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The nonmoving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (internal quotations and citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (alterations in original); *see also Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56–57 (2d Cir. 2012); *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005). The nonmoving party cannot avoid summary judgment simply by relying "on conclusory allegations or unsubstantiated speculation," *Jeffreys*, 426 F.3d at 554 (quotations and citations omitted); *see also DeFabio v. East Hampton Union Free Sch. Dist.*, 623 F.3d 71, 81 (2d Cir. 2010); and must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cnty.*, 541 F.3d 464, 471 (2d Cir. 2008). In determining whether a genuine issue of

fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

The Second Circuit has provided additional guidance with respect to motions for summary judgment in employment discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g.*, *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact," *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997), and "may be appropriate even in the fact-intensive context of discrimination cases." *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)). "However, even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

*DISCUSSION*

I.    Title VII Discrimination Claims Based on Race, Age, and Gender

Plaintiff's complaint asserts claims of employment discrimination based on Plaintiff's race, gender, and age (Dkt. 1 at 3.) Defendant moves for summary judgment with respect to all of Plaintiff's discrimination claims. (Dkt. 33 at 19–28.) Plaintiff's opposition does not respond

to Defendant's motion with respect to those claims, instead addressing only Plaintiff's claims based on her disability under the ADA. (Dkt. 39 at 2) (Plaintiff's opposition stating only that "Plaintiff has alleged violations of the [ADA], the Rehabilitation Act and the New York State Executive Law Article 15 based on the Defendant's refusal to grant her reasonable accommodation and the Defendant's decision to terminate Plaintiff because of her disabilities"). Accordingly, Plaintiff's claims of race, gender, and age discrimination are deemed abandoned and hereby are dismissed. *See, e.g.*, *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.") (citing *Douglas v. Victor Cap. Group*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (collecting cases)). Moreover, insofar as Plaintiff haphazardly mentions a claim under the Rehabilitation Act, Plaintiff makes no such claim in her complaint, and cannot make one in response to a motion for summary judgment. *See DeFilippo v. New York State Unified Court Sys.*, 223 Fed. App'x 45, 46 (2d Cir. 2007) (summary order); *Thomas v. Egan*, 1 Fed. App'x 52, 54 (2d Cir. 2001) (summary order) ("[I]t is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion."). Accordingly, the Court does not consider any claim based on the Rehabilitation Act.[5]

---

[5] It is within the Court's discretion to grant a plaintiff leave to amend the complaint to incorporate new claims asserted for the first time in response to a summary judgment motion. *Egan*, 1 Fed. App'x at 54. However, where such amendment would be futile, the Court need not grant leave to amend. *Lucente v. Int'l Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("One appropriate basis for denying leave to amend is that the proposed amendment is futile."). Here, reviewing the evidence and the allegations, there is no good cause to grant Plaintiff leave to assert a claim under the Rehabilitation Act, because the same analysis under the ADA would bar Plaintiff's Rehabilitation Act claim. *See* 29 U.S.C. § 794(d) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under [the ADA] as such sections

II.     <u>Disability Discrimination for Failure to Accommodate</u>

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to[, *inter alia*,] . . . discharge of employees." *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F. 3d 92, 96 (2d Cir. 2009) (citing 42 U.S.C. § 12112(a)).  Disability discrimination claims under the ADA are analyzed according to the firmly established burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  *See Heyman v. Queens Village Comm. for Mental Health for Jamaica Cmty. Adolescent Prog., Inc.*, 198 F.3d 68, 72 (2d Cir. 1999).  The Second Circuit in *Heyman* described the *McDonnell Douglas* framework as follows:

> Under *McDonnell Douglas*, plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. *See* [*Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)].  The burden of production then shifts to defendants, who must offer through the introduction of admissible evidence a non-discriminatory reason for their actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action. *See id.* at 38.  Plaintiff then must show that the proffered reason was merely a pretext for discrimination, which "may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more." *Id.* (internal quotations and citations omitted).

*Id.* at 72.

In order to establish a prima facie case of discrimination based on the failure to reasonably accommodate a disability, a plaintiff must establish by a preponderance of the evidence that (1) the employer-defendant is subject to the ADA; (2) the plaintiff was disabled within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, either with or without a reasonable accommodation; and (4) plaintiff suffered an adverse

---

relate to employment."); *see also Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004) (applying ADA standards to Rehabilitation Act claim).

employment action because of the disability.  *Id*. at 72; *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869–70 (2d Cir. 1998).

The parties do not dispute that Defendant is subject to the ADA's requirements and that Plaintiff suffers from a disability, at least temporarily, and therefore qualifies as disabled under the ADA.[6]  Rather, the parties' central disputes are (1) whether performing surgical operations was an "essential function" of Plaintiff's position, and (2) whether Defendant failed to make a reasonable accommodation to enable Plaintiff to satisfactorily perform the essential functions of the podiatrist position.  (*See, e.g.*, Dkt. 33 at 10–19.)

III.    Essential Job Function

Plaintiff was not cleared to return to work to perform operations or surgeries and was only cleared to perform consultations.  (Dkt. 39-2 ¶¶ 87, 90 (Plaintiff's rehabilitation specialist cleared her to return to work "without performing surgery at the present time"); Def. St. ¶ 18 (Plaintiff cleared to provide "consultative services")).  Plaintiff argues that performing surgical operations is not an essential function of the podiatrist position, whereas Defendant argues that it is.  (*See, e.g.*, Dkt. 39 at 10; Dkt. 33 at 11–16.)  Consequently, the Court must determine whether there is a genuine issue of fact with respect to which functions of the podiatrist position are essential.

"'Essential functions' are defined under EEOC regulations to mean the 'fundamental duties' to be performed in the position in question, but not functions that are merely 'marginal.'" *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003) (citing *Stone v. City of*

---

[6] "To qualify as disabled under subsection (A) of the ADA's definition of disability, a claimant must initially prove that he or she has a physical or mental impairment. . . . Claimants also need to demonstrate that the impairment limits a major life activity. . . . [and] that the limitation on the major life activity is substantial." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 194–95 (citations, alterations, quotations, and brackets omitted) (superseded by statute); 42 U.S.C. § 12102.

*Mt. Vernon*, 118 F.3d 92, 97 (2d Cir. 1997) (itself citing 29 C.F.R. § 1630.2(n)(1) (1996)). ADA

regulations provide that:

> A job function may be considered essential for any of several reasons,
> including but not limited to the following:
>
> (i) The function may be essential because the reason the position exists is to
> perform that function;
>
> (ii) The function may be essential because of the limited number of employees
> available among whom the performance of that job function can be
> distributed; and/or
>
> (iii) The function may be highly specialized so that the incumbent in the
> position is hired for his or her expertise or ability to perform the particular
> function.

29 C.F.R. § 1630.2(n). In evaluating whether a work duty is an essential function, and as

discussed more fully below, two factors are most central. First, "'[a] court must give

considerable deference to an employer's judgment regarding what functions are essential for

service in a particular position.'" *Id.* (citing *D'Amico v. City of New York*, 132 F.3d 145, 151 (2d

Cir. 1998)). Second, courts also should consider an employer's written job description, if one

exists, as evidence of an essential function. *See Loveyjoy-Wilson v. NOCO Motor Fuel, Inc.*, 263

F.3d 208, 222 (2d Cir. 2001) (referencing employer's job description to discern essential

functions thereof); 42 U.S.C. § 12111(8) ("consideration shall be given to the employer's

judgment as to what functions of a job are essential, and if an employer has prepared a written

description before advertising or interviewing applicants for the job, this description shall be

considered evidence of the essential functions of the job").

The ADA's regulations provide that "[e]vidence of whether a particular function is

essential includes, but is not limited to:

(i)   The employer's judgment as to which functions are essential;

(ii)  Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii)  The amount of time spent on the job performing the function;

(iv)  The consequences of not requiring the incumbent to perform the function;

(v)  The terms of a collective bargaining agreement;

(vi)  The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).  Clearly, the inquiry into whether a given work obligation is an essential function is a fact intensive one.  No one factor is dispositive, and the regulations themselves state that these examples are non-exhaustive.  *See Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997) ("Usually no one listed factor will be dispositive, and the regulations themselves state that the evidentiary examples provided are not meant to be exhaustive.") However, although fact-intensive, this issue can be resolved by summary judgment, if the material facts are undisputed.  *See* FRCP 56(c); *Anderson*, 477 U.S. at 251–252 (summary judgment may be granted where parties' submissions "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law").

(i)      Employer's Judgment as to which Functions are Essential

An employer's judgment with respect to which job functions are essential is to be afforded considerable deference and weight.  *See Shannon*, 332 F.3d at 100 (citing *D'Amico v. City of New York*, 132 F.3d at 151) ("In approaching this inquiry, a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position.") (quotations and alterations omitted).  An employer's judgment is "highly relevant evidence" as to essential functionality, but is "only one of the regulations' seven illustrative categories of evidence."  *Stone*, 118 F.3d at 99.

Defendant maintains that performing operations and procedures is an essential function of the podiatrist position. (Dkt. 33 at 11–16; Dkt. 31-2 at 5 ("NHCC would have been unable to accommodate Plaintiff in any podiatrist role at its facilities, as she was unable to perform the medical procedures and surgeries essential to that position.").) The declarations submitted by Defendant unequivocally state that medical procedures and operations are essential functions of the position. Dr. Faust states that "an essential part of the podiatrist role is the performance of surgery," that he wanted her to "perform the essential functions and responsibilities of a podiatrist at NHCC, including the performance of both medical procedures and surgeries," and that "NHCC would have readily returned Plaintiff to her position as podiatrist if she were physically able to perform the essential functions of that position." (Dkt. 31-2 ¶ 7, 13, 15.) Ms. Roarty's declaration likewise states her belief that the essential functions of the podiatrist position include performing surgeries. Roarty states that "[a]s the job description makes clear, the essential functions of the Podiatrist role include performing surgeries on the feet, treating fractures affecting the feet, and administering local anesthetics, among others," and "NHCC determined Plaintiff would be unable to perform the essential functions specific in the Podiatrist job description." (Dkt. 31-1 ¶ 5, 12.)

(ii)    Written Job Description

As a corollary to the employer's judgment, "[w]ritten job description[s] prepared before advertising or interviewing applicants for the job," (29 C.F.R. § 1630.2(n)(3)(ii)) are also afforded special weight. *See* 42 U.S.C. § 12111(8) (listing only "employer's judgment" and "written job description" as evidence to be considered). Here, the written job description of the podiatrist position is highly persuasive.

Defendant's job description of the podiatrist position sets forth performing surgical operations and other medical procedures. Indeed, the job description clearly designates operating on patients and performing procedures as "ADA ESSENTIAL FUNCTIONS." (Dkt 31-6.) The full list of ADA essential functions set forth in the job description is as follows:

1. Examines, diagnoses, *treats*, *operates*, and prescribes for diseases, injury, deformity, or other conditions of the foot.
2. *Operates* on the bones, muscles, or tendons of the feet for the correction of minor deficiencies and deformities of a mechanical or functional nature.
3. *Treats* simple and uncomplicated fractures of the bones of the feet.
4. Administers local anesthetics for therapeutic purposes as well as for anesthesia.
5. Prescribes and administers drugs and medications, and prescribes corrective devices, such as specially fitted shoes, arch supports, and insoles.

(Dkt. 31-6) (emphases added).[7] The only other job function listed in the job description, which is not designated an ADA essential function, is "[c]uts toe nails." (Dkt. 31-6.)

Plaintiff acknowledged in her deposition testimony that she performed duties that fell under these categories during her time working for Defendant. (*See* Dkt. 31-3 at 38–42; Dkt. 39-2 ¶ 43–44) (Plaintiff states she "provided medical treatment" to patients including "medical care to minor surgical procedures that were done at a patient's bedside"). Plaintiff argues, however, that these surgical procedures specifically, and performing surgery generally, are not essential functions of the podiatrist position. (Dkt. 39 at 2–3.) Plaintiff specifically argues that performing surgeries was not an essential function of her prior position because she did not perform "operating-room" surgery during her employment. (Dkt. 39 at 2–3; Dkt. 39-2 ¶ 42.) Plaintiff states that she "did not at any time perform surgery as part of her functions while she was employed by the Defendant[]." (Dkt. 39 at 3.) Yet Plaintiff testified that she performed "low level medical procedures . . . such as in grown toenails," and "was able to do [them] when

---

[7] Notably, the job description does not set forth "providing consultative services" as an essential function or even as a non-essential function.

[she] attempted to return to work [with Defendant] in March of 2009." (Dkt. 39-2 ¶ 66; Dkt. 31-3 at 38–42.) Furthermore, even to the extent Plaintiff argues that she did not previously perform surgeries during her employment, she acknowledged that she understood Defendant would require her to do so "once [it] got things in place" in the podiatry department and upon her return to work. (Dkt. 31-3 at 45:11–19.)

Moreover, Plaintiff cites no authority, and the Court finds none, for the proposition that simply because one did not perform all of the essential functions of a position, those functions are not essential. Rather, Plaintiff baldly states, without support, that "Plaintiff's [actual] job duties determine whether or not surgery was an essential function of her job[.]" (Dkt. 39 at 10.) This is erroneous. In evaluating the evidence of what constitutes an essential function, the Court must grant deference to what the employer defines as an essential function, not solely what the plaintiff did previously. *See Shannon*, 332 F.3d at 100 ("In approaching [the essential function inquiry], a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position.") (alterations omitted) (citing *D'Amico*, 132 F.3d at 151) (itself citing *Doe v. New York Univ.*, 666 F.2d 761, 776 (2d Cir. 1981)).

Plaintiff claims that she performed many functions as a podiatrist beyond those listed as essential functions in the written job description. (*See, e.g.*, Dkt. 39 at 15 ("Plaintiff's role . . . was at times purely consultative and administrative[.]").) Plaintiff urges that, therefore, the typical duties set forth in the written job description should not be considered because they do not contain all of the job functions Plaintiff performed previously. (Dkt. 39-2 ¶ 71.)[8] This

---

[8] Plaintiff also argues that the primary job function Defendant claims is an essential function is performing "surgeries in an operating room," which she never before performed. (Dkt. 39 at 10; *see also* Dkt. 39-2 at ¶ 52 ("I never performed any surgical procedures *in an operating room* at

argument misses the point. Merely because Plaintiff performed other tasks in addition to those set forth in the job description does not mean that the tasks stated therein are not essential functions for the position. The job description does not purport to be an exhaustive list of functions, but it identifies, at a minimum, those functions that Defendant considers essential, even if other tasks are also part of the job. The job description, along with Defendant's numerous statements and arguments, are expressly clear that Defendant considers performing surgeries and operations an essential function of the position. As a result, the first two factors are strongly persuasive that performing surgical procedures is an essential function of the podiatrist position at NHCC.

### (iii)     Amount of Time Spent on Task

The next category of evidence considered in the inquiry is "[t]he amount of time spent on the job performing the function." 29 C.F.R. § 1630.2(n)(3)(iii). The regulation is not precise as to whether the Court should consider the amount of time spent on the job *by the individual plaintiff*, or whether the proper inquiry is the amount of time others in the same position spend on that function. It is unnecessary to resolve that question, however, because considering Plaintiff's prior work tasks, it is clear that Plaintiff spent significant time performing intensive hands-on tasks and medical procedures prior to her accident.

Plaintiff argues that she never performed the job functions that are listed in the job description and that Defendant claims are essential. (Dkt. 39 at 10–11.) Plaintiff's own testimony belies the true nature of her work duties, however. Plaintiff's declaration states that

---

[NHCC] during my entire employment with defendant.") (emphasis added).) That job function is more specific than Defendants have stated, and Plaintiff points to no evidence showing that Defendant stated she was required to perform operating room surgeries specifically. Neither the job description nor Defendant's arguments refer to a job function as specific as "surgeries in an operating room." Plaintiff's focus on that specific task, therefore, is misplaced.

she "treated patients", "performed partial/total nail avulsions," "performed bedside debridement of ulcers," performed "low level medical procedures . . . [such as] in grown toenails," and performed "minor surgical procedures." (Dkt. 39-2 ¶¶ 29, 38, 40, 44, 66.) These types of procedures plainly fall within the job description of the podiatrist position and the functions Defendant contends are essential to that position. Accordingly, there is no genuine dispute as to whether Plaintiff previously performed the type of medical procedures that are defined as "ADA ESSENTIAL FUNCTIONS" in the podiatrist job description and by Defendant.

Moreover Defendant provided evidence that other podiatrists working at NHCC performed "surgeries"[9], the number of which has grown from seven per year in 2007, to 69 per year in 2009, the year of Plaintiff's termination. (Dkt. 33 at 13; Dkt. 31-2 ¶ 10; Def. St. ¶ 9.) Additionally, other podiatrists in the unit routinely performed surgeries during Plaintiff's employment, and continue to do so today, and podiatrists hired subsequent to Plaintiff's termination regularly perform podiatric surgeries. (Dkt. 33 at 13–14 & cited exhibits). Plaintiff does not dispute this evidence.

(iv)     <u>Other Factors and Conclusion</u>

The parties do not meaningfully address the last four categories of evidence the Court should consider in determining whether a job duty is an essential function. (*See* Dkts. 39, 33.) And it is unnecessary to consider those categories for which evidence was not presented, particularly where the governing regulations state that the categories of evidence merely are suggestions and not an exhaustive list. 29 C.F.R. § 1630.2(n)(3); *see also Stone*, 118 F.3d at 97.

---

[9] Defendant does not define the term "surgery" for purposes of these statistics. Nevertheless, the fact that the number of surgical operations was increasing at NHCC during Plaintiff's tenure there is further persuasive evidence that Defendant viewed the performance of surgical procedures to be an essential function of the podiatrist position.

Considering the evidence discussed above and the totality of the circumstances, Plaintiff has failed to raise a genuine dispute of fact that performing the surgical operations set forth in the podiatrist job description and articulated by Defendants is an essential function of the podiatrist position. No rational jury could conclude otherwise. The Court considers most persuasive, as required by the ADA, both the fact that Defendant has argued credibly and consistently that performing operations and procedures constitute essential functions of the position and that the job description—promulgated before this litigation—expressly states that those functions are essential. Moreover, Plaintiff admitted that she performed those functions prior to taking her leave of absence. (*See* Dkt. 31-3 at 38–42 (Plaintiff's deposition testimony regarding her performance of surgical operations).)

In concluding that Plaintiff has failed to raise a genuine issue regarding the essential functions of the podiatrist position, the Court is mindful of the Second Circuit's caution against granting summary judgment in cases involving questions of essential functions and reasonable accommodations, both of which are present here. In *Stone*, the Second Circuit reversed summary judgment that was granted in favor of the defendant based on the district court's findings regarding the essential functions of the position and what reasonable accommodations were available to the plaintiff. 118 F.3d at 99. The Second Circuit panel primarily faulted the district court because "the district court appear[ed] to have relied exclusively on the [employer's] opinion that the Department's capacity to fight multi-alarm fires would be unduly hampered by having assigned . . . a firefighter who could not engage in fire-suppression activity." *Id.* The panel noted that "[w]hile plainly the 'employer's judgment as to which functions are essential' is highly relevant evidence, it is only one of the regulations' seven illustrative categories of evidence, and it is the only category in the present case to suggest that the ability to extinguish

fires, enter burning buildings, and perform rescues is an essential function of a firefighter assigned to [the position plaintiff sought]." *Id.* (internal citation omitted). The court noted that the record revealed "no job descriptions and no collective bargaining agreement provisions" to support that conclusion, and that no other evidence from the other categories set forth in the regulations was present. *Id.*

The circumstances presented here are readily distinguishable from *Stone*. First, there is ample evidence beyond merely the *post hoc* judgment of the employer that performing minor surgical operations is an essential function of the position. In addition to the credible and well-supported claims that Defendant views performing surgical operations as an essential function of the position, the podiatrist job description, promulgated well before this litigation, clearly and forcefully states that surgical operations are "ADA ESSENTIAL FUNCTIONS." In *Stone*, there was no written job description supporting the employer's claim. Furthermore, here, Plaintiff admits that she spent significant time performing those functions prior to her accident and subsequent leave of absence. (*See* Dkt. 33 at 13 & accompanying exhibits). This evidence goes far beyond the evidence present in *Stone*, and is of a different character. Unlike in *Stone*, the evidence here does not consist solely of the employer's opinion of the essential functions of the position, although that evidence itself is persuasive and entitled to significant weight. There is strong and persuasive evidence in the job description, Defendant's characterization of the essential functions of the position during this litigation, and Plaintiff's own testimony, that performing surgical operations is an essential function of the podiatrist position.

In sum, Plaintiff has failed to demonstrate the existence of a triable issue of fact with respect to the essential functions of the podiatrist position, which, at a minimum, include the performance of surgeries and other medical procedures.

IV.    Reasonable Accommodation

The remaining allegation from Plaintiff's cause of action is that Defendant failed to make a reasonable accommodation to enable her to perform the essential functions of the podiatrist position.  "An employer violates the ADA . . . when it fails to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless the employer can establish that the accommodations would impose an undue hardship."  *Jackan*, 205 F.3d at 566 (citing 42 U.S.C. § 12112(b)(5)(A) (quotations and alterations omitted)).  To establish a claim for failure to make a reasonable accommodation, the plaintiff bears the burden of establishing a prima facie case.  "[T]he plaintiff's burden requires a showing that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184–85 (2d Cir. 2006).

The parties do not dispute the first, second, or fourth prongs.[10]  Rather, their dispute centers upon the third prong—whether a reasonable accommodation existed to enable Plaintiff to perform the essential functions of the podiatrist position.  According to the ADA, relevant reasonable accommodations may include:

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training, materials, or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

---

[10] As to the fourth prong, Defendant more specifically asserts that it has not made, and cannot be required to make, a reasonable accommodation because none exists.  (Dkt. 33 at 17–18.)

42 U.S.C. § 12111(9)(A), (B). In ascertaining and providing a disabled employee an appropriate reasonable accommodation, employers need not provide accommodations in the exact manner the employee requests or even provide the best possible solution. *Schroeder v. Suffolk Cnty. Comm. College*, 07-CV-2060, 2009 WL 1748869, at \*10 (E.D.N.Y. June 22, 2009) (citing 29 C.F.R. Pt. 1630, App. § 1630.9)). Rather, the accommodation need only be reasonable and enable the employee to perform the essential functions of the position.

An employee seeking to prove that an employer's failure to provide a proposed accommodation constitutes a violation of the ADA bears the burden of proving that an accommodation exists that would permit the employee to perform the job's essential functions. *Borkowski*, 63 F.3d at 138. Plaintiff also bears the initial burden, albeit a light one, to produce evidence that the accommodation also is reasonable. *Id.* (citing *Gilbert v. Frank*, 949 F.2d 637, at 642 (2d Cir. 1991)). "It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *McMillan v. City of New York*, 711 F.3d 120, 127 (2d Cir. 2013) (citing *Borkowski*, 63 F.3d at 138) Once the plaintiff has done this, she has made out a *prima facie* case showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant. *Borkowski*, 63 F.3d at 138. If the employee succeeds in pointing to such an accommodation, the question then becomes whether the proposed accommodation is *reasonable*. *Id.*; *Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000). An accommodation is deemed "reasonable" only where "its costs are not clearly disproportionate to the benefits that it will produce." *Borkowski*, 63 F.3d at 138 (citing *Barth v. Gelb*, 2 F.3d 1180, 1187 (D.C. Cir. 1993) ("[A]n accommodation would be both unreasonable and impose an undue burden 'if it either imposes

undue financial and administrative burdens on [an agency] or requires a fundamental alteration in the nature of [its] program.'"")).

Critical to the resolution of the present motion is the principle that under no circumstances can a reasonable accommodation involve the elimination of an essential job function. *See Shannon*, 332 F.3d at 100 (citing *Gilbert*, 949 F.2d at 642) ("A reasonable accommodation can never involve the elimination of an essential function of a job."). "[H]aving someone else do part of a job may sometimes mean eliminating the essential functions of the job. But at other times providing an assistant to help with a job may be an accommodation that does not remove an essential function of the job from the disabled employee." *Borkowski*, 63 F.3d at 140–41.

Plaintiff argues that a reasonable accommodation to permit her to perform her essential job functions would be providing her with a nurse to assist her in performing her duties, having other podiatrists perform operations and surgeries, and allowing Plaintiff to provide only consultation services. (Dkt. 39 at 15.) These are the only reasonable accommodations Plaintiff suggests.

Plaintiff fails to establish a *prima facie* case that a reasonable accommodation exists. First, it is evident that the accommodation Plaintiff seeks, the appointment of a nurse, having other podiatrists perform surgeries, and being permitted to "provide consultation services when she returned to work," involves the elimination of at least one essential function of the podiatrist position. The essential functions of the podiatrist position do not include providing consulting services, but do include performing the medical procedures and operations discussed above. Thus, by having other employees perform those job functions for her, the accommodation Plaintiff seeks would eliminate at least one essential function from her position by way of

transferring those functions to others. *See Shannon*, 332 F.3d at 100 (citing *Gilbert*, 949 F.2d at 642) ("A reasonable accommodation can never involve the elimination of an essential function of a job.").

Plaintiff's proposed accommodation is also not reasonable because it amounts to having other employees do her job for her, and would result in Defendant having to employ two professionals to perform the job of one podiatrist.[11] (Dkt. 31-2 at 5 ("Permitting Plaintiff to 'consult' would require NHCC to employ an additional podiatrist to accompany her throughout the day and perform the medical procedures and surgeries required by the position, which is a wholly untenable arrangement. There is simply no position [] that would allow a podiatrist to forgo performing these essential functions and work in a purely consultative capacity.").) Plaintiff has submitted no evidence that the accommodation she seeks is "a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Borkowski*, 63 F.3d at 138 (citing *Gilbert*, 949 F.2d at 642). To the contrary, it is clear that the costs of hiring two employees to perform the job of one clearly outweigh the benefits of doing so.

Additionally, an employer is not required to reassign an employee if no comparable position is vacant, and an employer is not required to create a new position to accommodate the employee. *See Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir. 1999). Although Plaintiff has not suggested that she could be transferred to a vacant position or that another position be created for her, Plaintiff's request that the essential functions of her position be handled by others amounts to both reassignment (to a currently non-existent position), and a

---

[11] For example, Plaintiff suggested during her deposition that a nurse could assist her in "hold[ing] things" and in "taking the patient's shoes and socks off." (Dkt. 153–54.) Plaintiff also suggests that a nurse might perform the medical procedures for her, or that "other podiatrists" could handle required surgical and medical procedures. (Dkt. 31-3 at 169–70.)

request to create a new position, *i.e.*, one that does not require the performance of a podiatrist's essential job functions.

Accordingly, Plaintiff has failed to establish a *prima facie* case that a reasonable accommodation existed.

      b.  Interactive Process

Lastly, Plaintiff contends that Defendant failed to engage in the "interactive process" contemplated by the ADA. (Dkt. 39 at 15–20.) The ADA requires that an employer participate in a "good-faith interactive process" to determine what reasonable accommodations could allow a qualified, disabled employee to perform the essential functions of the position. *Jackan*, 205 F.3d at 566 ("The ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated.") (citing 29 C.F.R. § 1630(o)(3)); *see also Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 864 (8th Cir. 2006) ("Under the ADA, if no reasonable accommodation is available, an employer is not liable for failing to engage in a good-faith interactive process."). There is consensus among the circuit courts that, if no reasonable accommodation is available, an employer is not required to engage in a good-faith interactive process. *See McBride*, 583 F.3d at 100–101 (collecting cases). Accordingly, failure to engage in the interactive process, standing by itself, does not entitle a plaintiff to recovery under the ADA. *See id.*

As discussed above, there was no reasonable accommodation for Plaintiff. Plaintiff suffered from severe immobility in her hands. Her own physician concluded that she only could provide "consultative services," and she was only cleared to return to work in a non-surgical capacity. (Def. St. ¶ 18.) There is no genuine dispute that no reasonable accommodation was available to Plaintiff, and therefore Defendant was not required to engage in an interactive

process to determine what a reasonable accommodation for Plaintiff would have been. *McBride*, 583 F.3d at 100–101 ("[A]n employer's failure to engage in a sufficient interactive process does not form the basis of a claim under the ADA and evidence thereof does not allow a plaintiff to avoid summary judgment unless she also establishes that, at least with the aid of some identified accommodation, she was qualified for the position at issue."). The Court already has determined that no reasonable accommodation exists to permit Plaintiff to perform the essential functions of the podiatrist position. Therefore, Defendant was not required to engage in an interactive process, and thus any failure to do so would not support liability under the ADA.[12]

V.      State Law Claims

Defendant's motion for summary judgment references a distinct state law discrimination claim under the New York State Human Rights Law (Dkt. 33 at 28.) However, Plaintiff's complaint sets forth no such state-law claim. (Dkt. 1.) Plaintiff is not permitted to assert a new claim in opposition to a motion for summary judgment. *See Hawana v. City of New York*, 230 F. Supp. 2d 518, 534 (S.D.N.Y. 2002) ("The plaintiff cannot raise new claims in response to a motion for summary judgment.") (citing *McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688, 691, 698 (S.D.N.Y. 1999) (collecting cases)).

In any event, even if Plaintiff had asserted such a claim in her complaint, it would have to be dismissed because the analysis of NYSHRL discrimination claims is identical to the analysis under the ADA. *See Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) (finding that a NYSHRL disability discrimination claim "is governed by the same legal standards as govern federal ADA claims" and dismissing the NYSHRL claim "on the same basis as [the

---

[12] Although the Court need not, and does not, address the issue of whether Defendant actually engaged in a sufficiently interactive process, it should be noted that, based on the record before the Court, and for substantially the same reasons as set forth by Defendant in its dismissal motion, it is likely that Defendant, in fact, engaged in a sufficiently interactive process.

plaintiff']s ADA claim").  Accordingly, to the extent Plaintiff attempts to assert a claim under the NYSHRL, it is dismissed for the same reasons as Plaintiff's ADA claim.

*CONCLUSION*

It is truly unfortunate that Plaintiff sustained the injuries that she did during the car accident and that she continues to suffer the ill effects of that event.  Nevertheless, Plaintiff has failed to raise a genuine issue of triable fact with respect to whether Defendant failed to reasonably accommodate her post-accident inability to perform medical procedures, an essential function of the podiatrist position at Defendant's facilities.  Accordingly, Defendant's motion for summary judgment is granted.  The Clerk of Court respectfully is directed to enter judgment in Defendant's favor on all of Plaintiff's claims, and to terminate this matter.


SO ORDERED:


   /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge


Dated:	August 21, 2014
	Brooklyn, New York